## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Foundation Capital Resources, Inc., | |
| Plaintiff, | Civil No. 3:21-cv-01278 (JAM) |
| v. | |
| Ofonime Udo-Okon, *et al.*, | December 5, 2022 |
| Defendants. | |

## RULING AND ORDER ON PLAINTIFF'S
## APPLICATION FOR ATTORNEYS' FEES [ECF No. 103]

The Plaintiff, Foundation Capital Resources, Inc. ("FCR"), obtained an order compelling the Defendant, C.R.E.A.M. Enterprises, LLC ("C.R.E.A.M."), to respond to eleven interrogatories and eight requests for production. (ECF No 66.) When C.R.E.A.M. did not timely comply with the order, FCR moved for entry of a default judgment and other sanctions. (ECF No. 81.) The Court denied the motion to the extent that it sought a default judgment but granted it to the extent that it sought lesser sanctions, including attorneys' fees. (ECF No. 95.)

The Court then authorized FCR to make an attorney fee submission, and it authorized C.R.E.A.M. to file an objection to that submission. (*Id.*) FCR now requests an award of $12,252.00 in fees and costs. (ECF Nos. 103, 103-1, 103-2.) C.R.E.A.M. objects on several grounds, including that the "request is excessive and goes far beyond the scope of the Court's Orders and should be substantially reduced." (ECF No. 108, at 1.) C.R.E.A.M. asks the Court not to award fees at all, but if it does so, to award no more than $4,038.00. (*Id.* at 4.)

Having considered the parties' submissions, the Court will order C.R.E.A.M. and/or its counsel to pay FCR $7,392.00. The Court's order is set forth more fully in Section III below.

I.    BACKGROUND

The Court will assume the reader's familiarity with the long history of the dispute of which this case is but one part, and will set forth only those background facts necessary to an understanding of FCR's fee application.  FCR is a real estate investment trust that loaned millions of dollars to the Prayer Tabernacle Church of Love, Inc. ("PTCLI") to build a new cathedral at 729 Union Avenue in Bridgeport.  The loans were secured by mortgages on the cathedral and on four other properties that were then owned by PTCLI.  PTCLI defaulted on the loans, and FCR sued to foreclose.  *Found. Cap. Res. v. Prayer Tabernacle Church of Love, Inc.*, No. 3:17-cv-135 (JAM) ("First Action").  In that suit, FCR obtained a judgment of strict foreclosure and an order of possession with respect to all five properties.  (First Action, ECF No. 156.)

When FCR attempted to take possession, several third parties objected on the ground that they had leasehold interests that had not been extinguished in the First Action.  C.R.E.A.M. was one such objector; it claimed to have leased the property located at 1277 Stratford Avenue for a one-year term beginning on February 1, 2020, and since it had not been a party to the First Action, it contended that its leasehold was still valid.  (*See* Compl., ECF No. 1, ¶¶ 85-90 & Ex. G.)  FCR therefore filed this case as an omitted party action under Connecticut General Statutes § 49-30, seeking to foreclose on the claimed leasehold interests of C.R.E.A.M. and the other purported tenants.

On January 31, 2022, FCR served Interrogatories and Requests for Production upon several Defendants, including C.R.E.A.M.  (*See* ECF No. 81, at 2; ECF No. 61, at 2.)  C.R.E.A.M. did not comply by March 2, 2022, as required by Rules 33 and 34.  (*See* ECF No. 52.)  When another month passed without a response, FCR grew concerned about the parties' ability to keep the then-existing discovery deadline, and it alerted the Court to C.R.E.A.M.'s continued non-compliance in

a motion to modify the scheduling order. (ECF No. 52.) In response, the Court ordered the parties to meet and confer to resolve any disputes, and it further ordered that if the parties could not do so, they should file simultaneous letter briefs in accordance with Judge Meyer's chambers practices. (ECF No. 60.) The parties failed to reach a resolution, so they filed briefs on May 2, 2022. (ECF Nos. 61, 62.) After reviewing the briefs, the Court agreed with FCR on all disputed issues and ordered C.R.E.A.M. to comply with the eleven disputed interrogatories and eight requests for production by May 31, 2022. (ECF No. 66.)

Five days before this deadline, C.R.E.A.M moved to extend it, claiming that its principal was busy planning an anniversary and birthday party. (ECF No. 68.) The Court denied the motion, pointing out that "[p]arty planning is an insufficient reason for extending a court-ordered deadline, particularly when one considers that the deadline for completing all discovery" was only weeks away. (ECF No. 69.) The Court reaffirmed that "C.R.E.A.M.'s deadline for complying with the order at ECF No. 66 remains May 31, 2022." (*Id.*)

Despite the clarity of this instruction, C.R.E.A.M. did not comply on May 31st. The next day, FCR moved for sanctions against C.R.E.A.M. "for failing to obey this Court's orders." (ECF No. 81.) FCR sought "entry of a default judgment against CREAM pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(vi)," along with "such other and further relief as this Court deems necessary and just." (*Id.* at 1, 5.)

C.R.E.A.M. filed its opposition on June 22, 2022. (ECF No. 85.) It argued that its non-compliance was *de minimis* and therefore not sanctionable; it stated that it served its interrogatory responses one day late, on June 1, 2022, and its document production three days late on June 3, 2022. (*Id.* at 1.) It also suggested that FCR was partially at fault for its failure to comply. C.R.E.A.M. had evidently stored some of its corporate documents at another property that FCR

3

now owned by virtue of the judgment in the First Action, 1243 Stratford Avenue, and it claimed to be surprised when FCR "locked [it] out" of the building and prevented access to the documents. (*Id.* at 2) ("[N]either C.R.E.A.M. nor the undersigned counsel received any prior notice that C.R.E.A.M. would be locked out of the building by the Plaintiff.  As a result, C.R.E.A.M. had no opportunity to retrieve its records.").  In response, FCR filed a reply brief on July 11, 2022.  (ECF No. 92.)

After a hearing, the Court granted FCR's sanctions motion in part and denied it in part. (ECF No. 95.)  Specifically, the Court denied FCR's motion to the extent that it sought a default judgment but granted it to the extent it sought lesser sanctions.  (*Id.*)  In particular, the Court ordered C.R.E.A.M. to pay FCR's reasonable expenses, including attorney's fees, incurred in bringing both the May 2, 2022 discovery motion and the June 1, 2022 sanctions motion.  It then directed FCR to file an affidavit detailing its fees and costs.

FCR submitted an affidavit on July 27, 2022.  (ECF No. 103.)  It claimed that its law firm spent 37.6 hours litigating the two motions.  (ECF No. 103-1.)  Applying hourly rates of $345.00 for its principal attorney and $165.00 for its lead paralegal, it translated those 37.6 hours into a claim for $12,252.00 in fees.  (ECF No. 103-2.)

C.R.E.A.M. filed an opposition memorandum on August 4, 2022.  (ECF No. 108.)  It argued that FCR's $12,252.00 claim "is excessive and goes far beyond the scope of the Court's Orders and should be substantially reduced."  (*Id.* at 1.)  C.R.E.A.M. urged the Court not to allow fees for the May 2, 2022 motion to compel, because "[t]here was no finding by the Court that the Defendants' Objections were made in bad faith or were otherwise improper," and accordingly an award of fees for that motion would "in effect penaliz[e] C.R.E.A.M. for pressing good faith objections to discovery."  (*Id.* at 1-2.)  C.R.E.A.M. also asserted that the $12,252.00 claim included

4

hours "that are, at best, tangential to the Motion," and hourly rates that "are on the high side." (*Id.* at 2.)  Finally, it "ask[ed] the Court to remember that the discovery at issue . . . was only one day late with respect to the supplemental interrogatory responses and three days late with respect to the supplemental document production." (*Id.* at 4.)  Summing up, it "ask[ed] that if the Court is inclined to order monetary sanctions," "that such sanctions be substantially less than that which is requested by [FCR] and in no case exceed $4,038.00." (*Id.*)

FCR did not file a reply brief, and its time for doing so has expired.  Its fee application is therefore ripe for decision.

## II.    Discussion

### A.    Whether Fees Should be Awarded

C.R.E.A.M. first argues that any award should not include the fees that FCR incurred in bringing the initial motion to compel at ECF No. 61.  (ECF No. 108, at 1-2.)  It claims to have objected to FCR's interrogatories and requests for production in good faith, and it argues that a fee order would "in effect penaliz[e] CREAM for pressing good faith objections to discovery." (*Id.* at 2.)  C.R.E.A.M. also seeks to escape liability for the fees that FCR incurred in bringing the motion for sanctions at ECF No. 81, because "the discovery at issue . . . was only one day late with respect to the supplemental interrogatory responses and three days late with respect to the supplemental document production." (*Id.* at 4.)

Because the Court already ruled that C.R.E.A.M. must pay the fees and costs of both motions, leaving only the amount of the award to be determined (ECF No. 95), it construes C.R.E.A.M.'s argument as a motion for reconsideration.  "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might

reasonably be expected to alter the conclusion reached by the court." *Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Fed. Practice & Procedure § 4478 at 790). Moreover, Local Rule 7 provides that motions for reconsideration must "'be filed and served within seven (7) days of the filing of the decision or order from which such relief is sought." D. Conn. L. Civ. R. 7(c). Here, C.R.E.A.M. did not move for reconsideration within seven days of the order at ECF No. 95, and in any event, it has identified no intervening change of law, new evidence, clear error, or manifest injustice.

Even if the Court were to reconsider the question of whether to award fees for the initial motion to compel, it would still reach the same result. Rule 37(a)(5)(A) provides that if a motion to compel is granted in its entirety, "the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P 37(a)(5)(A) (emphasis added). There are three exceptions to this rule: (1) where "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;" (2) where "the opposing party's nondisclosure, response, or objection was substantially justified;" or (3) where "other circumstances make an award of expenses unjust." *Id.* Unjustified resistance to discovery is not among the exceptions, even when the resisting party claims to have been acting in good faith.

Here, none of the three Rule 37(a)(5)(A) exceptions apply. C.R.E.A.M. resisted FCR's interrogatories and requests for production principally on the ground that it had filed a motion to

dismiss (*see* ECF No. 62, at 1), but the Court had explained many months before that "the pendency of a motion to dismiss does not automatically stay discovery, except in cases covered by the Private Securities Litigation Reform Act."  (Notice re: Mot. to Dismiss, ECF No. 38) (citing, *inter alia*. *Brooks v. Macy's, Inc.*, No. 10-cv-5304, 2010 WL 5297756, at *1 (S.D.N.Y. Dec. 21, 2010)). C.R.E.A.M. also resisted on lack-of-relevance grounds, but this was not justified either; FCR's interrogatories and requests for production inquired about the *bona fides* of the purported C.R.E.A.M.-PTCLI lease and, therefore, were inarguably relevant.  Thus, even if the Court were inclined to revisit its order on the initial motion to compel, it is unpersuaded that C.R.E.A.M.'s resistance was "substantially justified" or that "other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A).

The Court would also reach the same result if it were to reconsider the question of whether to award fees for the motion for sanctions.  C.R.E.A.M. misstates the record when it says that its document production was only three days late.  In fact, C.R.E.A.M. did not complete its document production until August 16, 2022, more than two months after its court-ordered compliance date. (Joint Discovery Status Report, ECF No. 109, at 4.)  C.R.E.A.M. argues that FCR was responsible for this delay because the additional documents were kept in the 1243 Stratford Avenue property, and FCR locked it out of that property on May 26, 2022.  (ECF No. 108, at 4.)   But this is no excuse.  The documents had been requested on January 31, 2022, and under Rule 34, their production was due on March 2, 2022.  Moreover, the Court ordered C.R.E.A.M. to produce the documents on May 14, 2022.  C.R.E.A.M. cannot escape its fee liability merely because it chose to wait until after May 26, 2022, to begin collecting its responsive documents.

When a party "fails to obey an order to provide or permit discovery," the court "*must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses,

including attorney's fees, caused by the failure [to obey the court order], unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(A)-(C) (emphasis added). "Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order." *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 26 (D. Conn. 2013) (quoting *Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991)). With respect to the motion for sanctions, as with the initial motion to compel, the Court is unpersuaded that C.R.E.A.M.'s failures were justified or that an award of fees would be unjust.

### B.     The Amount of Fees to be Awarded

FCR seeks an award of $12,252.00, reflecting a total of 33.6 hours at a rate of $345.00 an hour for its lead counsel Kristin B. Mayhew, and 4.0 hours at a rate of $165.00 an hour for paralegal Karen Warshauer. (ECF No. 103-2.) In opposition, C.R.E.A.M. argues that any fee award should not exceed $4,038.00, because FCR's hours and hourly rates are both too high. (*See* ECF No. 108.)

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The product of this multiplication operation is often referred to as the "lodestar." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). While the Second Circuit has suggested that the term is outdated, *see Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) (observing that "[t]he meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness"), it has also held that district courts must calculate the figure. *Ortiz v. City of N.Y.*, 843 F. App'x 355, 358 (2d Cir. 2021) (summary order) ("We have

explained that district courts evaluating a request for attorneys' fees must conduct a lodestar analysis, which calculates reasonable attorneys' fees by multiplying the reasonable hours expended on the action by a reasonable hourly rate, which results in a presumptively reasonable fee.") (internal quotation marks omitted).

In assessing the first element of the lodestar calculation – the reasonable hourly rate – the Second Circuit has directed district courts to "bear in mind *all* of the case-specific variables that [it] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill*, 522 F.3d at 190 (emphasis in original). "The reasonable hourly rate is the rate a paying client would be willing to pay," and in determining that rate, district courts should consider (among other things) the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[1] *Id.* "Courts also consider whether the individual attorney performed work 'commensurate with his level of experience,' and have reduced rates when (for example) an experienced partner-level attorney performs work that a junior associate could have performed." *Shea v. Sieunarine*, No. 3:21-cv-673 (JCH) (TOF), 2022 WL 3359155, at *3 (D. Conn. Aug. 15, 2022) (quoting *Wei v. Sichuan Pepper, Inc.*, No. 3:19-cv-525 (JBA) (TOF), 2022 WL 385226, at *17 (D. Conn. Jan. 17, 2022), *report and recommendation adopted*, 2022 WL 382019 (D. Conn. Feb. 2, 2022)).

---

[1] The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Lilly v. City of N.Y.*, 934 F.3d 222, 228 (2d Cir. 2019).

In this case, FCR claims hourly rates of $345.00 and $165.00, respectively, for Attorney Mayhew and Ms. Warshauer.  (ECF No. 103-2.)  Attorney Mayhew has been practicing law since 1995 and has been a law firm partner since 2003.  (ECF No. 103-1, ¶¶ 2-3.)  She chairs the Commercial Law & Bankruptcy Section of the Connecticut Bar Association and is a fellow of the Connecticut Bar Foundation.  (*Id.* ¶ 4.)  She typically charges $600.00 per hour, but she has been charging $345.00 for this matter because that was her rate at the beginning of the FCR-PTCLI dispute in 2013.  (*Id.* ¶ 9.)

C.R.E.A.M. does not dispute that Attorney Mayhew is a highly experienced and qualified lawyer, but it argues that this case is too simple to command a rate of $345.00 per hour.  (ECF No. 108, at 2.)  It points out that in the Superior Court, "the hourly rate which foreclosure committees in the Fairfield Judicial District are permitted to charge is $225.00 per hour."  (*Id.*)  It therefore reasons that an hourly rate of $345.00 "is on the high side."  (*Id.*)

The Court does not doubt that Attorney Mayhew's experience and capabilities can command an hourly rate of at least $345.00 in the marketplace.  Courts in this district have approved higher rates for attorneys with similar levels of experience; in *Doe v. East Lyme Board of Education*, for example, Judge Arterton approved an hourly rate of $375.00 for an experienced partner-level attorney in an education case.  No. 3:11-cv-291 (JBA), 2019 WL 1397455, at *14 (D. Conn. Mar. 27, 2019).  Moreover, courts have approved higher rates for attorneys who did not achieve the same results that Attorney Mayhew achieved here.  In *Wei*, the Court approved an hourly rate of $375.00 for an employment law partner who prevailed on some issues but lost on others.  2022 WL 385226, at *17.  Here, Attorney Mayhew and FCR prevailed on all disputed issues.

Yet the Court agrees with C.R.E.A.M. that an hourly rate of $345.00 is too high for the work required by the two motions.  As noted above, the attorney's customary hourly rate and her "experience, reputation, and ability" are only two of the twelve *Johnson* factors; the Court must also consider "the novelty and difficulty of the questions" and the "level of skill required to perform the legal service properly."  *Lilly*, 934 F.3d at 228.  Applying the latter two factors, courts often reduce the rates of even effective, experienced, partner-level attorneys when that work could have been done equally well by a more junior lawyer.  In *Shea*, for example, a law firm partner with thirty years' experience charged an hourly rate of $400.00, but the Court reduced the rate to $300.00 because his motion to compel presented "one of the simpler tasks that can confront an attorney, and the Plaintiffs have not explained why it required a partner-level attorney."  2022 WL 3359155, at *3.  The same is true here.  While Attorney Mayhew is no less capable and qualified than the plaintiffs' attorney in *Shea*, litigating the two motions involved little more than brushing aside C.R.E.A.M.'s facially unmeritorious objections, and it could have been handled by a more junior attorney at her firm.  The Court therefore finds that $300.00, not $345.00, is a reasonable hourly rate for the attorney work performed.

FCR provided no information on Ms. Warshauer's experience and qualifications.  (*See generally* ECF No. 103-1.)  Courts in this district often approve paralegal rates of $150.00 per hour, and Ms. Warshauer's claimed rate of $165.00 would therefore be unusual.  *See, e.g., Wei*, 2022 WL 385226, at *18; *Negron v. Patriot Auto Sales, LLC*, No. 3:17-cv-583 (JCH), 2019 WL 4463440, at *4 (D. Conn. Sept. 17, 2019).  Because FCR has provided no information on her experience and capabilities sufficient to justify an extraordinary rate, the Court concludes that $150.00 is a reasonable hourly rate for Ms. Warshauer.

In analyzing the second element of the lodestar – the reasonable number of hours required – courts consider, among other things, the quality of the representation and the complexity of the work.  "In determining whether an excessive amount of time was expended on the matter, the Court may consider, *inter alia*, the nature and quality of the work submitted by counsel in connection with the litigation, and whether the work was complicated or straightforward." *Yuajian Lin v. La Vie en Schezuan Rest. Corp.*, No. 15-cv-9507 (DF), 2020 WL 1819941, at \*2 (S.D.N.Y. Apr. 9, 2020); *see also Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*, No. 13-cv-3061 (JGK), 2014 WL 2624759, at \*6 (S.D.N.Y. June 10, 2014) ("In assessing whether the hours worked were reasonable, courts in this district often take into account the straightforward nature of the work performed and the relative simplicity of the issues involved.") (citation and brackets omitted).  Courts are "not to compensate counsel for unnecessary hours . . . and in sizing the appropriate reduction, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application[.]" *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 57 (S.D.N.Y. 2015) (citation and internal quotation marks omitted).  In any event, the party seeking fees bears the burden of demonstrating that its request is reasonable, and it must provide the Court with enough information to assess its application.  *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

C.R.E.A.M. objects to FCR's claim of 37.6 hours on two principal grounds.  First, it notes that FCR incurred only 16.7 hours of attorney time and 1.7 hours of paralegal time in drafting its initial[2] briefs and in attending the July 11, 2022 hearing, and it claims that all of the other time

---

[2]    C.R.E.A.M. evidently believes that FCR cannot recover for fees incurred for the reply brief on the motion for sanctions (ECF No. 92), because the Court's order granting the motion referenced only the initial brief at ECF No. 81.  (ECF No. 95.)  But the Court was clear that FCR could seek

entries – for "review of correspondence, preparing for and attending discovery conferences, communications with its client" and the like – "are, at best, tangential to the Motion for Sanctions" and should be disallowed.  (ECF No. 108, at 2-3.)  Second, it urges the Court to disallow the time entries that preceded the drafting of the letter brief on the initial motion to compel, or that post-dated the decision on the motion for sanctions.  (*Id.*)

The Court agrees with C.R.E.A.M. on the latter point.  The entries that preceded the letter brief include hours spent reviewing a request for an extension of time, and in reviewing C.R.E.A.M.'s responses to interrogatories and requests for production (ECF No. 103-1, at 1) – things that FCR would have had to do even if there had been no dispute.  And the entries that post-dated the Court's July 13, 2022 order were of course not necessary to the prosecution of the motion, but instead were composed of administrative tasks (*e.g.,* calendaring of deadlines) that FCR would have had to do in any event.  (*Id.* at 2.)

On the former point, the Court does not agree that all entries beyond 18.4 hours were "tangential" and subject to disallowance, but several do appear to be longer than reasonable or necessary.  For example, Ms. Warshauer billed .9 hours to "prepare and redact" photographs submitted as exhibits to FCR's sanctions reply brief.  (ECF No. 103-1, at 2.)  But there were only four such photographs, and the redactions consisted only of placing black boxes over the faces of seven individuals for privacy purposes; FCR has not explained why it took nearly an hour.  (*See*

---

all fees reasonably incurred in bringing the motion for sanctions (*id.*), and there was nothing unreasonable about FCR's decision to file a reply brief in this instance.   It is well-established that a fee petition may include not only those hours spent on the motion to compel itself, but also the hours "spent reasonably in preparing and defending an application for fees."  *East Point Sys., Inc. v. Maxim*, No. 3:13-cv-00215 (VAB), 2016 WL 1169553, at *1 (D. Conn. Mar. 22, 2016); *see also Perez v. Lasership, Inc.*, No. 3:15-mc-00031 (CSH), 2015 WL 8750965, at *4 (D. Conn. Dec. 14, 2015) (observing that "the Second Circuit has routinely and consistently held that time expended in litigating a fee petition is reimbursable").

ECF No. 92-1.)  FCR says that Attorney Mayhew and Ms. Warshauer spent a total of 2.1 hours

preparing videos for potential display at the hearing (ECF No. 103-1, at 2), but it has not explained

why this required anything more than placing the videos on Attorney Mayhew's laptop.  Moreover,

other entries involve work that FCR would have had to do even in the absence of a dispute, such

as "[r]eview[ing] supplemental discovery responses."  (*Id.*)  To address these concerns without

conducting a laborious, entry-by-entry analysis, the Court will exercise its discretion to apply a

twenty percent reduction to the hours requested.  *See Beastie Boys*, 112 F. Supp. 3d at 57

(approving the technique of an across-the-board percentage reduction "as a practical means of

trimming fat from a fee application").

In summary, the Court concludes (1) that $300.00 is a reasonable hourly rate for the work

performed by Attorney Mayhew; (2) that $150.00 is a reasonable hourly rate for the work

performed by Ms. Warshauer; (3) that the time entries before April 25, 2022, and after July 12,

2022, should be disallowed; and (4) that the remaining hours should be reduced by twenty percent.

This calculation yields a figure of $7,392.00.

Of course, the product of a reasonable hourly rate and a reasonable number of hours

establishes only a "presumptively reasonable" fee.  "[I]t is still within the court's discretion to

adjust the amount upward or downward based on the case-specific factors."  *Tyco Healthcare Grp.*

*LP v. Ethicon Endo-Surgery, Inc.*, No. 3:10-cv-60 (JBA), 2012 WL 4092515, at *1 (D. Conn. Sept.

17, 2012) (quotation marks and citation omitted).  "Hence, the process is really a four-step one, as

the court must: (1) determine the reasonable hourly rate; (2) determine the number of hours

reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4)

make any appropriate adjustments to arrive at the final fee award."  *Adorno v. Port Auth. of New*

*York & New Jersey*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010).  Here, however, the Court observes no reason to make any adjustments to the presumptively reasonable fee.

## III.   CONCLUSION

In closing, the Court considers whether the fee order should enter against C.R.E.A.M. or its counsel.  Rules 37(a) and 37(b) both state that either the disobedient party or its attorney can be made to pay for the moving party's reasonable expenses.  Fed. R. Civ. P. 37(a)-(b).  "Where . . . the relative culpability of counsel and client for perpetrating discovery abuses is not clear, courts do not hesitate to hold both equally liable for the attorney's fees awarded."  *New York v. Grand River Enterps. Six Nations, Ltd.*, No. 14-cv-910A(F), 2021 WL 4958653, at *6 (W.D.N.Y. Oct. 26, 2021) (citing *Mugavero v. Arms Acres, Inc.*, 680 F. Supp. 2d 544, 575 (S.D.N.Y. 2010)).  In this case, there is reason to suppose that the fault rests with C.R.E.A.M.; as noted in its opposition paper, all other defendants were represented by the same attorney and yet managed to meet the May 31st deadline.  (ECF No. 108, at 2.)  But the Court cannot say so with enough certainty to deviate from the foregoing legal principle.

For all the reasons cited above, the attorney fee application of the plaintiff, Foundation Capital Resources, Inc., is allowed in part and disallowed in part.  The defendant C.R.E.A.M. Enterprises, LLC or its counsel are ordered to pay Foundation Capital Resources, Inc. the sum of $7,392.00 on or before January 5, 2023.  It is so ordered.

This is not a Recommended Ruling.  It is a ruling by a magistrate judge on a "nondispositive motion[ ] . . . relating to discovery," D. Conn. L. R. 72.1(C)(2), and as such it is reviewable pursuant to the "clearly erroneous" statutory standard of review.  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2(b).  It is an order of the Court unless reversed or modified upon timely objection under Local Rule 72.2(a).

*/s/ Thomas O. Farrish*

Hon. Thomas O. Farrish
United States Magistrate Judge