UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FOUNDATION CAPITAL RESOURCES, INC., *Plaintiff*, v. UDO-OKON *et al.*, *Defendants*. | No. 3:21-cv-1278 (JAM) |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

This is the latest round of litigation stemming from a long-running foreclosure action against a church in Bridgeport, Connecticut. The lender won foreclosure and as a result has obtained full title ownership of several properties formerly owned by the church. But several tenants of the church continue to occupy some of the properties, and so the lender has filed this subsequent action seeking to foreclose upon and ultimately to take possession of these properties from the tenants.

The lender invokes a statute—Conn. Gen. Stat. § 49-30—that allows for a second round of foreclosure proceedings against parties who were omitted from a prior foreclosure proceeding. And the lender has now moved for summary judgment in its favor. The tenants object on the ground that § 49-30 does not apply to foreclosure actions involving unrecorded tenancy leases. In the alternative, the tenants argue that the Court should set law days for them in order to afford them an opportunity to pay off the outstanding mortgage balance on the properties. I conclude that all the tenants' arguments lack merit and therefore will grant the lender's motion for summary judgment.

## BACKGROUND

From 2007 to 2009 the plaintiff Foundation Capital Resources, Inc., loaned over $8 million to the Prayer Tabernacle Church of Love, Inc., for various construction projects.[1] As security for those loans, the Church mortgaged several of its properties in Bridgeport, Connecticut.[2] After the Church defaulted, Foundation Capital sued to foreclose.[3] I presided over that action and granted summary judgment for Foundation Capital on its affirmative case but held a bench trial as to certain defenses and counterclaims that the Church had raised.[4] After trial, I ruled again for Foundation Capital.[5] I then entered a judgment of strict foreclosure, set the law days, and specified the amount that the Church would have to pay in order to redeem its title to the properties.[6]

About two weeks before the law days, the Church declared bankruptcy.[7] But the Bankruptcy Court promptly dismissed the petition.[8] Nevertheless, the filing of the bankruptcy

---

[1] Doc. #118-1 at 1–4 (¶¶ 1–13). I derive the following facts from Foundation Capital's Rule 56(a)(1) Statement of Undisputed Material Facts. Doc. #116-2. Because the parties agree on most of the facts, I cite almost exclusively to the defendants' Rule 56(a)(2) response. Doc. #118-1. I deem those facts as set forth by Foundation Capital to be true to the extent that they are admitted by the defendants. I also take judicial notice of the court filings in related cases and cite to those filings when relevant. Fed. R. Evid. 201(b).
[2] Doc. #118-1 at 2–4 (¶¶ 4–13).
[3] *Id.* at 4 (¶ 14); *see also Found. Cap. Res., Inc. v. Prayer Tabernacle Church of Love, Inc.*, 2018 WL 4697281, at *1–6 (D. Conn. 2018) (*Found. Cap. I*) (summarizing the facts and procedural posture of the prior case).
[4] Doc. #118-1 at 4–5 (¶ 15); *see also Found. Cap. Res., Inc. v. Prayer Tabernacle Church of Love, Inc.*, 2020 WL 967466 (D. Conn. 2020) (*Found. Cap. II*) (findings of fact and conclusions of law from the bench trial); *Found. Cap. I*, 2018 WL 4697281, at *12 (summarizing the relief granted on Foundation Capital's motion for summary judgment).
[5] Doc. #118-1 at 5 (¶ 16); *see also Found. Cap. II*, 2020 WL 967466, at *24 ("On the basis of all of the evidence and arguments, I find in favor of plaintiff Foundation Capital Resources Inc. and against defendant Prayer Tabernacle Church of Love with respect to all issues of liability, defenses, and the counterclaim.").
[6] Doc. #118-1 at 5 (¶¶ 17–18); *see also* Mot. for J. of Strict Foreclosure, *Found. Cap. Res., Inc. v. Prayer Tabernacle Church of Love, Inc. et al.*, No. 3:17-cv-135 (D. Conn. May 20, 2020), Doc. #148; Order to Show Cause RE: Setting of Law Days, No. 3:17-cv-135 (D. Conn. May 28, 2020), Doc. #153; Order Granting Mot. for J. of Strict Foreclosure, No. 3:17-cv-135 (D. Conn. May 28, 2020), Doc. #155; J. and Order of Strict Foreclosure with Order of Law Days, No. 3:17-cv-135 (D. Conn. May 29, 2020), Doc. #156.
[7] Doc. #118-1 at 5–6 (¶¶ 19–20); *see also* Notice of Filing of Pet. Under Title 11 of the United States Code, No. 3:17-cv-135 (D. Conn. June 29, 2020), Doc. #158.
[8] Doc. #118-1 at 6 (¶ 24); *see also* Pl.'s Mot. to Re-set Law Days After Chapter 11 Dismissal, No. 3:17-cv-135 (D. Conn. July 23, 2020), Doc. #160; Order Granting Mot. to Dismiss, *In re Prayer Tabernacle Church of Love, Inc.*, No. 20-50605 (Bankr. D. Conn. July 17, 2020), Doc. #61.

petition prompted Foundation Capital to move to reset the law days.[9] The reset law days passed without the Church redeeming (*i.e.*, paying off the mortgage), and absolute title in the Bridgeport properties then vested with Foundation Capital.[10]

Several months later, Foundation Capital sought to take physical possession of the foreclosed properties.[11] But Foundation Capital learned that some of the properties were occupied by people and businesses who had not been named as parties to the foreclosure action against the Church.[12] I ordered the Church to provide copies of the current occupants' leases to Foundation Capital.[13] After it did so, Foundation Capital moved for a determination that those leases were invalid.[14] Judge Farrish conducted an evidentiary hearing and determined that, under Connecticut law, at least two of the leases were valid, and I adopted his recommended ruling.[15]

Foundation Capital then filed this current lawsuit pursuant to a Connecticut law—Conn. Gen. Stat. § 49-30—that allows for foreclosure proceedings to be instituted against parties who were omitted from prior foreclosure proceedings.[16] Foundation Capital sued all the remaining leaseholders: Ofonime Udo-Okon and Idongesit Udo-Okon, Tuesday Cruz, Yvonne Matthews, Jenette Holt, Ronald and Donna Reid, Faith Gospel Assembly Ministries, Inc. ("Faith Gospel"), and C.R.E.A.M. Enterprises, LLC ("CREAM Enterprises").[17] The Udo-Okons and Holt failed to

---

[9] Doc. #118-1 at 7 (¶¶ 25–26); *see also* Order Granting Mot. to Reset Law Days, No. 3:17-cv-135 (D. Conn. July 24, 2020), Doc. #161.
[10] Doc. #118-1 at 7 (¶¶ 27–29).
[11] *Id.* at 8 (¶ 30).
[12] *Ibid.* (¶ 31).
[13] *Ibid.* (¶ 32).
[14] *Ibid.* (¶ 33).
[15] *Id.* at 9 (¶¶ 34–37); *see also Found. Cap. Res., Inc. v. Prayer Tabernacle Church of Love, Inc.*, 2021 WL 3863428 (D. Conn. 2021) (Report and Recommendation) (*Found. Cap. III*), *adopted by* 2021 WL 3861794 (D. Conn. 2021).
[16] Doc. #1.
[17] *Id.* at 2–3 (¶¶ 3–11). CREAM Enterprises is a Bridgeport-based business with Sheila Dina and Damynicque Norris as principals and Kenneth H. Moales, Jr., as its agent. *See* Connecticut Secretary of State, Business Records, C.R.E.A.M. Enterprises, LLC, https://service.ct.gov/business/s/onlinebusinesssearch?businessNameEn=wqMmYyTlFetXYNn2xdtrNc%2BQyza5S qsBJOtdzONro%2BiI1wWlRrarGkJxDrJYSqOH [https://perma.cc/TK7E-3LJN] (last accessed July 7, 2023). Pastor Moales is the Senior Pastor and CEO of the Church. *See Found. Cap. I*, 2018 WL 4697281, at *2.

3

appear in this action, and I entered a default judgment against them.[18] Faith Gospel settled.[19] Cruz vacated her property and has apparently abandoned any continuing claim of interest.[20] Foundation Capital now moves for summary judgment against the Matthews, the Reids, and CREAM Enterprises.[21]

## DISCUSSION

The principles governing review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues of fact but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*); *Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023).[22]

This case involves a state law foreclosure action for which there is federal diversity jurisdiction. Absent a controlling decision from a state's highest court on a question of state law, a federal court's role is to carefully predict how the state court would rule on the issue presented.

---

[18] Docs. #29, #33, #74, #77, #111, #112.
[19] Doc. #64.
[20] Doc. #118-1 at 11 (¶ 47). Earlier in this case, Attorney Lenes moved to withdraw as Cruz's attorney because she moved out and no longer wished to participate in this litigation. *See* Doc. #70 at 2 (¶ 6). I denied that motion without prejudice because it was not proper grounds for Attorney Lenes to withdraw representation. Doc. #79. Attorney Lenes has not filed a supplemental motion to withdraw his representation of Cruz.
[21] Doc. #116. Foundation Capital's motion also names Cruz, but as noted above it appears that Cruz has abandoned the premises and any defense of this action.
[22] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

*See Haar v. Nationwide Mut. Fire Ins. Co.*, 918 F.3d 231, 233 (2d Cir. 2019) (*per curiam*). In so doing, a federal court should give proper regard to the relevant rulings of the state's lower courts and may also consider decisions from other jurisdictions on the same or analogous issues. *See In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (subsequent case history omitted).

"Connecticut follows the title theory of mortgages." *JP Morgan Chase Bank v. Winthrop Props.*, 312 Conn. 662, 673 (2014). Under that theory, after the parties execute a mortgage on real property in conjunction with the mortgagee's financing for the mortgagor's benefit, "the mortgagee [*i.e.*, the lender] holds legal title and the mortgagor [*i.e.*, the borrower] holds equitable title to the property." *Ibid.* The mortgagor as the holder of equitable title "has the right to redeem the legal title on the performance of certain conditions contained within the mortgage instrument." *Ibid.* If the mortgagor fails to pay the mortgagee as required, then the mortgagee may seek to foreclose, and "[t]he purpose of the foreclosure is to extinguish the mortgagor's equitable right of redemption that he retained when he granted legal title to his property to the mortgagee following the execution of the mortgage." *Ibid.*

After a foreclosure judgment enters, a court sets a "law day"—that is, a final date for the mortgagor to redeem its title by means of paying the mortgage. "In Connecticut, the passage of the law days in an action for strict foreclosure extinguishes a mortgagor's equitable right of redemption and vests absolute title in the encumbrancer [mortgagee]." *U.S. Bank Nat'l Ass'n v. Rothermel*, 339 Conn. 366, 375 (2021).

The current lawsuit stems from the fact that Foundation Capital did not name the defendant tenants as parties in its initial foreclosure proceedings against the Church. As the Connecticut Supreme Court has explained, if a tenant has not been made party to an initial foreclosure proceeding, the lender has one of two options in order to dispossess the tenant from

5

the property. The lender may bring a summary process eviction action pursuant to Conn. Gen. Stat. § 47a-23a or the lender may initiate a second foreclosure action pursuant to Conn. Gen. Stat. § 49-30. *See Tappin v. Homecomings Fin. Network, Inc.*, 265 Conn. 741, 748 (2003).

Foundation Capital has chosen the second option—to proceed under Conn. Gen. Stat. § 49-30, a statute which bears the title "Omission of parties in foreclosure actions." The statute provides in full:

> When a mortgage or lien on real estate has been foreclosed and one or more parties owning any interest in or holding an encumbrance on such real estate subsequent or subordinate to such mortgage or lien has been omitted or has not been foreclosed of such interest or encumbrance because of improper service of process or for any other reason, all other parties foreclosed by the foreclosure judgment shall be bound thereby as fully as if no such omission or defect had occurred and shall not retain any equity or right to redeem such foreclosed real estate. Such omission or failure to properly foreclose such party or parties may be completely cured and cleared by deed or foreclosure or other proper legal proceedings to which the only necessary parties shall be the party acquiring such foreclosure title, or his successor in title, and the party or parties thus not foreclosed, or their respective successors in title.

The first part of the statute "provides that, when there has been a foreclosure and a party with an interest has been omitted from that proceeding, for any reason, all parties who *were* foreclosed by the judgment are bound as fully as if no omission had occurred and do not retain any equity or right to redeem." *Mortg. Elec. Registration Sys., Inc. v. White*, 278 Conn. 219, 233 (2006) (emphasis in original). Thus, the Church is bound by the Court's prior foreclosure judgment against it and does not get a second bite at the apple—that is, another chance to pay off the outstanding debt—simply because the current tenant defendants were not parties to the prior foreclosure proceeding in this Court.

The second part of the statute provides that "the omission may be completely cured and cleared by … foreclosure … proceedings to which the only necessary parties shall be the party acquiring such foreclosure title … and the party or parties thus not foreclosed." *Ibid.* In this case,

6

under § 49-30, only the Church's tenants (*i.e.*, the omitted parties) and Foundation Capital are required parties to cure the omission.

A court's task in a § 49-30 action "is a narrow one[] and essentially consists of examining the record or taking evidence to answer two questions: 1) [w]as there an omitted party, and, if so, 2) under the circumstances of the first foreclosure, would that party's interest or encumbrance have been foreclosed in the original action?" *Stonybrook Gardens Coop. v. NewRez, LLC*, 2022 WL 4103143, at *1 (Conn. Super. Ct. 2022).

As to the first question, the tenants constitute omitted parties under the statute in the sense that they were not named as parties in the original foreclosure proceedings despite holding leasehold interests during the pendency of these proceedings. Foundation Capital filed the original foreclosure action against the Church in January 2017.[23] I entered the judgment of strict foreclosure on May 29, 2020, and Foundation Capital acquired absolute title to the Bridgeport properties on August 6, 2020, by operation of the law days.[24] Even though the Reids signed their lease with the Church after Foundation Capital acquired title to the property in August 2020, they had an oral lease with the Church as early as March 2020.[25] The other defendants signed written leases with the Church after Foundation Capital sought to foreclose in January 2017 and before the May 2020 judgment.[26]

---

[23] Compl., No. 3:17-cv-135 (D. Conn. Jan. 30, 2017), Doc. #1.
[24] *See* J. and Order of Strict Foreclosure with Order of Law Days, No. 3:17-cv-135 (D. Conn. May 29, 2020), Doc. #156; Order Granting Mot. to Reset Law Days, No. 3:17-cv-135 (D. Conn. July 24, 2020), Doc. #161.
[25] *See* Doc. #118-1 at 12 (¶ 54) (the Reids signed their lease on or about October 1, 2020); *Found. Cap. III*, 2021 WL 3863428, at *11–12 (noting the existence of an oral lease as early as March 2020 and recommending the Court deny Foundation Capital's motion to find the lease invalid), *adopted by* 2021 WL 3861794 (D. Conn. 2021). An oral agreement to rent or lease a property is valid. *See* Conn. Gen. Stat. § 47a-1(i) (defining "Rental agreement" to mean "all agreements, written or oral").
[26] Doc. #118-1 at 10–11 (¶ 43) (Cruz signed her lease on or about April 1, 2020), 11 (¶ 49) (Matthews signed her lease on or about March 1, 2020), 14 (¶ 64) (CREAM Enterprises signed its lease on or about February 1, 2020).

7

The answer to the second question is even more straightforward. "The lease of a mortgagor's tenant, if the lease was subsequent to the mortgage, is extinguished upon foreclosure by the mortgagee and the passing of the law days without a redemption," and "[t]he tenant becomes a tenant at sufferance at the moment his or her rightful possession terminates." *Fed. Home Loan Mortg. Corp. v. Van Sickle*, 52 Conn. App. 37, 41–42 (1999).

Despite all this, the tenants argue that they are not proper defendants under § 49-30 because their leases were not recorded on the land records.[27] For this argument, the defendants rely on an interpretation of § 49-30 by the Connecticut Appellate Court in *City of Bridgeport v. 2284 Corp., Inc.*, 63 Conn. App. 624 (2001). This was a case in which a city that obtained title to property by means of a tax foreclosure action brought a summary process action for possession against a tenant who had a prior unrecorded leasehold interest in the property. *Id.* at 626. The tenant argued "that the foreclosure judgment was not effective against it because it had not been made a party and, consequently, was not served with process in the foreclosure proceeding." *Ibid.* The Appellate Court held that "[w]hile the city had the option of naming the defendant as a party in the foreclosure and then proceeding to obtain possession by way of ejectment, it was not required to follow that course," and "[i]nstead, it could elect not to name the defendant, and then to proceed, as it did, to obtain possession by way of summary process." *Id.* at 627.

The Appellate Court then went on to rule that the city was not required to seek relief by way of an omitted-party action under § 49-30 rather than by way of a summary process action for possession. It noted that "[s]ection 49–30 establishes a procedure for foreclosing an encumbrance that is omitted in the original foreclosure," but that "[a]s used in § 49–30, the term encumbrance refers to recorded encumbrances." *Id.* at 628–29. The defendants rely on this latter

---

[27] Doc. #118 at 2–4.

aspect of the Appellate Court's ruling to argue that—because their leases were not recorded—it was improper for Foundation Capital to seek to proceed against them under § 49-30.[28]

I do not agree for several reasons. First, the scope of § 49–30 extends beyond parties who have an "encumbrance," whether recorded or unrecorded. The statute broadly includes in disjunctive terms any parties "owning any interest in *or* holding an encumbrance on such real estate." Conn. Gen. Stat. § 49-30 (emphasis added). Therefore, even accepting the Appellate Court's statement that the statutory term "encumbrance" refers only to a recorded encumbrance, the statute by its terms also extends to "any interest" in property beyond an encumbrance. Thus, in a decision post-dating the Appellate Court's ruling in *City of Bridgeport*, the Connecticut Supreme Court's ruling in *Tappin* acknowledged the availability of § 49-30 for an action against a tenant occupying foreclosed property. *See* 265 Conn. at 748. It did so without suggesting that the tenant's lease must have been recorded in order for § 49-30 to apply.

Indeed, the Appellate Court in *City of Bridgeport* expressed a well-founded doubt that a tenant's unrecorded lease amounts to an "encumbrance" at all. *See* 63 Conn. App. at 627 n.4 ("Query as to whether an unrecorded lease is even an encumbrance."). "An encumbrance is a burden on the title and, as such, impedes its transfer." *Ghent v. Meadowhaven Condo., Inc.*, 77 Conn. App. 276, 284 (2003) (citing Ballentine's Law Dictionary (3d ed. 1969)). In more expansive terms, the Appellate Court has ruled that "[a]n encumbrance is defined as 'every right to or interest in the land which may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance,'" and that "[a]ll encumbrances may be classed as either (1) a pecuniary charge against the premises, such as mortgages, judgment liens, tax liens, or assessments, or (2) estates or interests in the property

---

[28] *Id.* at 3.

9

less than the fee, like leases, life estates or dower rights, or (3) easements or servitudes on the land, such as rights of way, restrictive covenants and profits." *Frimberger v. Anzellotti*, 25 Conn. App. 401, 405 (1991) (quoting and citing H. Tiffany, Real Property (1975) §§ 1002–07).

Because foreclosure against a mortgagor altogether extinguishes the lease rights of the mortgagor's tenant, *see Van Sickle*, 52 Conn. App. at 41–42, these extinguished lease rights and mere status as a tenant at sufferance cannot amount to an encumbrance, *i.e.*, a property right or burden on the property's title that impedes its transfer. *See Farris v. Hershfield*, 325 Mass. 176, 178 (1950) ("[A] tenancy at will which is terminated by the conveyance itself, leaving the tenant a mere tenant at sufferance without right in the land … is not an encumbrance against which the covenants implied in the statutory forms of deeds under [Massachusetts law] furnish protection.").

In any event, even assuming that the tenants' leases qualified as "encumbrances" within the meaning of § 49-30, the Appellate Court in *City of Bridgeport* did not explain why the term "encumbrance" as used in § 49-30 is restricted only to recorded encumbrances. It is difficult to square such an interpretation with the text of the statute that does not include any such restriction. "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." Conn. Gen. Stat. § 1-2z; *Balloli v. New Haven Police Dep't*, 324 Conn. 14, 18–19 (2016) (same).

Moreover, § 49-30 has a remedial purpose: "the statute's language unambiguously declares that it provides for a *cure* for the omission of an encumbrancer," and "the legislature

10

intended this statute to provide a means of restoring the title to the condition that would have existed had the encumbrancer not been omitted." *F.D.I.C. v. Bombero*, 37 Conn. App. 764, 771 (1995) (emphasis in original). For such remedial legislation, the Connecticut Supreme Court instructs that "we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the act" and that "[t]he purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes." *Balloli*, 324 Conn. at 19. Therefore, even if § 49-30 were ambiguous about whether the term "encumbrance" refers only to recorded encumbrances, the statute's remedial purpose weighs against such a restrictive interpretation and instead weighs in favor of a broad interpretation to allow its application against any party—even a tenant at sufferance—who may assert a putative interest in the property subject to foreclosure.

As even the Appellate Court in *City of Bridgeport* acknowledged, "the tenor of § 49–30 makes it clear that it was intended to benefit the foreclosing party who, through mistake or oversight, omitted an encumbrance," and "[i]t is not intended to be used as a sword by the omitted party." 63 Conn. App. at 628. But that is precisely what the defendants here are trying to do by arguing that Foundation Capital was not free to avail itself of § 49–30 in order to establish its right to foreclose and to possession of the premises against them.

The tenants also rely on a provision of the Connecticut Practice Book which provides that a mortgagee must include in his complaint for foreclosure "[a]ll encumbrances *of record* upon the property both prior and subsequent to the encumbrance sought to be foreclosed." Conn. Prac. Book § 10-69 (2023) (emphasis added). But the fact that a court practice rule requires a foreclosure plaintiff to name certain types of defendants (*e.g.*, parties with recorded encumbrances) does not mean that a foreclosure plaintiff is precluded from naming any other

11

types of defendants (*e.g.*, parties with non-recorded property interests or encumbrances). What is more, an omitted-party action under § 49-30 concerns who *may* be named as a foreclosure defendant, not who *must* be named as a defendant, and § 49-30 does not limit its application only to parties who were required to have been named as defendants in the initial foreclosure proceedings. Thus, the practice rule and the statute serve different purposes. And if they conflict, the Connecticut Practice Book cannot be read to supersede or modify the provisions of a state statute. *See Mitchell v. Mitchell*, 194 Conn. 312, 324 (1984) ("[W]here a statute creates a substantive right, a conflicting practice book rule cannot stand.").

Lastly, the defendants argue that even if it is proper for Foundation Capital to proceed against them by way of an omitted-party action under § 49-30, the Court should set new law days for them to exercise their right to redemption.[29] But on this point, the defendant's principal case—*City of Bridgeport*—cuts against them, because it ruled that "if a tenant's lease is not recorded, the tenant has no right to be part of the foreclosure action and, more specifically, is not entitled to a law day." 63 Conn. App. at 627.

Moreover, as the Connecticut Supreme Court has made clear, the right of redemption extends only to "[e]ligible parties[, which] include not only the mortgagor or the mortgagor's successor, but also subsequent encumbrancers on the property." *Winthrop Props.*, 312 Conn. at 674 (citing Conn. Gen. Stat. §§ 49-19, -20). And as discussed above, the tenants—as holders of now-extinguished unrecorded leasehold interests—are not eligible parties because they are neither the mortgagor nor subsequent encumbrancers on the properties. They are no more than tenants at sufferance of Foundation Capital and with no right to the setting of law days or to redeem any ownership or other interest in the properties.

---

[29] *Id.* at 5–7.

In short, I conclude that there are no genuine fact issues in dispute and that summary judgment should be granted in favor of Foundation Capital on its foreclosure claim against the defendant tenants under § 49-30. Based on my prediction of how the Connecticut Supreme Court would rule if confronted with these issues, I reject the tenants' claim that § 49-30 cannot be applied here or that they are entitled to law days and an opportunity to redeem by paying off the mortgage.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the motion for summary judgment (Doc. #116). Foundation Capital shall promptly submit a proposed order and judgment for the tenants to vacate the properties to effectuate this ruling.

It is so ordered.

Dated at New Haven this 7th day of July 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge